IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CHERYL SARTOR, ) | Civil Action No. 3:11-2703-RBH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB and SSI on January 3, 2008, alleging disability as of November 17, 2007. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 15, 2009, at which Plaintiff and a vocational expert ("VE") appeared and testified. On January 22, 2010, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled because she was able to perform her past relevant work as a parts inspector.

Plaintiff was forty-three years old at the time of the ALJ's decision. She has a high school education and past relevant work as a parts inspector. Tr. 60, 178, 209. She alleges disability due to cervical degenerative disc disease, lumbar neuritis, and a mood disorder.

The ALJ found (Tr. 12-18):

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since November 17, 2007, the alleged onset date (20 CFR 404.1571, *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cervical degenerative disc disease, lumbar neuritis, and mood disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift 10 pounds frequently and 20 pounds occasionally and sit, stand or walk for six hours each in an 8-hour workday. She is limited to frequent pushing/pulling, overhead reaching and fingering with upper extremities, frequent climbing steps/stairs, balancing, crawling, or kneeling, occasional stooping or crouching and detailed, not complex work, SVP 3-4, with occasional public contact. She can never climb ladders, ropes or scaffolds.

6. The claimant is capable of performing past relevant work as a parts inspector. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 17, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

On August 8, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on October 6, 2011.

## **STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## **MEDICAL EVIDENCE**

On March 30, 2006, Plaintiff presented to the Spartanburg Regional Healthcare System ("SRHS") Emergency Center complaining of right elbow pain. She left without receiving treatment. Tr. 290-292. Plaintiff returned three days later on April 3, 2006, complaining of right wrist and neck pain. Tr. 294. X-rays of her wrist were normal, and x-rays of her cervical spine showed degenerative changes at C5-C6, with normally aligned vertebral bodies. Tr. 300. She was diagnosed with wrist sprain and cervical degenerative joint disease and discharged with prescriptions for Lortab and Cyclobenzaprine (also known as Flexeril). Tr. 295-296. Plaintiff returned to SRHS again on April 17, 2006, complaining of pain throughout her right arm. Tr. 304. Plaintiff reported that she was

diagnosed with carpal tunnel syndrome two weeks prior. She was prescribed Tramadol and discharged. Tr. 306-307.

On May 6, 2006, Plaintiff was examined by Dr. Green B. Neal. She complained of numbness in her right hand and an inability to close and grasp objects with her hand. Physical examination was normal, except for some numbness in both hands, a positive test for carpal tunnel, and some muscle spasm in Plaintiff's neck and back. Dr. Neal instructed Plaintiff to continue taking Lortab and Motrin, and to continue to wear wrist splints. Tr. 683-684.

On May 12, 2006, an MRI of Plaintiff's cervical spine showed mild disc protrusions at two levels, but normal signal and vertebral body height. Tr. 275-276. An MRI of Plaintiff's right wrist was normal on May 22, 2006, except for some "nominal" inflammation. Tr. 273.

Plaintiff was treated at SRHS on September 10, 2006 for painful bumps on her left arm and hand. She was diagnosed with left arm mass and referred to surgical specialists. Tr. 313-318. Plaintiff returned to SRHS on November 30, 2006, complaining of lower back pain that had not improved with chiropractic care. She was diagnosed with muscle strain, prescribed Ultram and Naproxen, referred her for physical therapy, and instructed to exercise and apply heat to her back. Tr. 320-322. Plaintiff returned in March 2007, complaining of right finger pain she rated as a ten out of ten on a ten-point pain scale, as a result of bumping her finger on a crate at work the preceding day. Despite her complaints of extreme pain, Plaintiff left the emergency room before receiving treatment. Tr. 310-311. On May 4, 2007, Plaintiff presented to SRHS complaining of bilateral wrist pain, and she was prescribed Lortab and Ibuprofen. Tr. 405-409.

On July 26, 2007, Plaintiff was examined by Dr. Ernesto Potes, a neurologist. Examination revealed no tenderness or reduced range of motion in her spine; normal muscle tone and strength;

normal gait; normal reflexes; and slightly reduced sensation to pin prick in her fingers. Dr. Potes thought that Plaintiff had probable bilateral carpal tunnel syndrome. Tr. 533-534.

Dr. Phillip G. Esce, a neurological surgeon, examined Plaintiff on October 2, 2007. Plaintiff reported that two previous nerve conduction studies had ruled out carpal tunnel syndrome. Examination revealed that Plaintiff had decreased sensation in her right arm, was sore to palpation, and had reduced range of motion in her neck. Dr. Esce noted that an earlier MRI showed disc herniation at two levels, and recommended Plaintiff undergo diskectomy and fusion surgery. Tr. 346.

On October 23, 2007, Plaintiff was seen by Dr. David C. Trott. Plaintiff complained of right shoulder pain which she rated as ten out of ten, as well as neck pain which resulted in her neck becoming "locked." Examination revealed extremely limited range of motion in Plaintiff's neck, and well as tenderness in her right shoulder and spine. Dr. Trott diagnosed neck pain and torticollis; prescribed Flexeril, Ultram, and a "biofreeze" cream; and instructed Plaintiff to stretch at home pending approval for physical therapy. Tr. 434-436. Dr. Trott also ordered x-rays of Plaintiff's cervical spine, which showed degenerative changes at C4-C5 and C5-C6, but no acute findings. Tr. 403.

The next day, Plaintiff presented to SRHS complaining of neck pain. She was diagnosed with a sprain, and prescribed Indomethacin and Zanaflex. Tr. 411-414. One week later, Plaintiff was seen by Dr. Huneiza Shaikh, an associate of Dr. Trott. Plaintiff was noted to be in no acute distress, and examination revealed some neck tenderness and "slightly" reduced range of motion. Dr. Shaikh recommended continuing Plaintiff's prescribed medication and initiating a course of physical therapy. Tr. 440-442.

Plaintiff began physical therapy in November 2007. She attended only four sessions, and was discharged for nonattendance. Tr. 365-383. Plaintiff returned to Dr. Trott on November 16, 2007, continuing to complain of neck, right arm, and arm pain, as well as an inability to use her right arm. Examination revealed decreased sensation in Plaintiff's right hand with weak hand grip, pain in her right shoulder that restricted movement, and tenderness and pain in her cervical spine. Dr. Trott prescribed Lortab, and instructed Plaintiff to continue with physical therapy and consult with a neurosurgeon. Tr. 451-452.

Plaintiff presented to SRHS on November 20, 2007, complaining of neck and back pain after being involved in an automobile accident. She was provided prescriptions for Cyclobenzaprine and Tramadol and released. Tr. 426. She returned to SRHS the following month with continued complaints of shoulder pain. X-rays of her right shoulder were negative. Tr. 416-422.

In March 2008, an MRI of Plaintiff's cervical spine showed multi-level spondylosis, mild stenosis, and moderate neuroforaminal narrowing, but no disc herniation. Tr. 527-528. Dr. Potes' examination was essentially normal on March 20, 2008. Tr. 465-466. The following week, Dr. Potes indicated that a recent MRI showed multi-level stenosis and testing did not show any systemic disease. Tr. 464.

On May 5, 2008, Plaintiff saw Dr. Richard T. Hanna of ReGenesis Community Health Center ("ReGenesis") to establish care. She was in no distress and her physical examination was largely normal, except for pain in her right shoulder and some anemia. Dr. Hanna diagnosed Plaintiff with anemia, shoulder pain, dependent tobacco use disorder, depressive disorder, and intervertebral disc disorder with myelopathy (cervical region). Tr. 519-521. She returned to ReGenesis in June,

at which time Dr. James D. Franklin noted that Plaintiff exhibited normal muscle strength and tone, with no evidence of muscle atrophy. Tr. 522-523.

A Physical Residual Functional Capacity ("RFC") Assessment was completed by Dr. Dale Van Slooten, a State agency physician, on May 22, 2008. He opined that Plaintiff was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing/walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. Dr. Van Slooten thought that Plaintiff could occasionally climb ladders, ropes, and scaffolds, and could frequently perform all other postural activities. He limited Plaintiff to only occasional bilateral overhead reaching. Tr. 489-496.

A Psychiatric Review Technique Questionnaire was completed by Dr. Lisa Varner, a State agency psychologist, on May 27, 2008. Dr. Varner opined that Plaintiff had the medically determinable impairment of depression causing mild restriction of daily activities; mild difficulty in maintaining social functioning; no difficulty in maintaining concentration, persistence, and pace; and no episodes of decompensation. Dr. Varner stated that Plaintiff's mental impairments imposed only "minimal limitations on her ability to perform basic work functions." Tr. 497-510.

On June 10, 2008, Dr. Franklin refilled Plaintiff's prescription for iron sulfate and counseled her on nutrient balance, physical activity, coping skills, and stress reduction. Tr. 522-523. On June 18, 2008, Plaintiff complained to Dr. Potes about neck and right shoulder pain. Tr. 531. Examination revealed no numbness or muscle weakness, and she had normal gait, balance, and reflexes. Dr. Potes recommended a course of physical therapy. Tr. 531. On July 28, 2008, Dr. Potes completed a form at the request of the Commissioner indicating that Plaintiff had no mental diagnosis. Tr. 544.

On July 14, 2008, Plaintiff was examined by Dr. Philip J. Hodge. Plaintiff complained of ten out of ten pain in her cervical spine and numbness in both arms. Examination was largely normal. Dr. Hodge noted that Plaintiff had cervical disc herniations at C5-6 and C4-5 with neck and arm pain, but no evidence of myelopathy on examination. He opined that he would like Plaintiff to try epidural steroids before considering surgery. Tr. 539-541. On July 21, 2008, Plaintiff was examined by Dr. Aathi Thiyaga, a pain management specialist. It was noted that Plaintiff exhibited tenderness in her neck, and moderately restricted range of motion. However, she had normal muscle strength and tone, without evidence of atrophy. Dr. Thiyaga administered an epidural injection. Tr. 709-711.

A Physical RFC Assessment was completed by Dr. Seham El-Ibiary, a State agency physician, on July 31, 2008. He opined that Plaintiff was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing/walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. He thought she had limited ability to push and/or pull with her upper extremities. Dr. El-Ibiary opined that Plaintiff could frequently kneel, crouch, and climb ramps and stairs; could occasionally stoop and crawl; could never climb ladders, ropes, and scaffolds; and could occasionally reach overhead bilaterally. Tr. 545-552.

A Psychiatric Review Technique Questionnaire was completed by Dr. Robbie Ronin, a State agency psychologist, on August 5, 2008. Dr. Ronin opined that Plaintiff had the medically determinable impairment of depression causing mild restriction of daily activities; mild difficulty in maintaining social functioning; mild difficulty in maintaining concentration, persistence, and pace; and no episodes of decompensation. Dr. Ronin wrote that Plaintiff's mental impairments "impose only minimal limitations and do not preclude work activity." Tr. 580-593.

8

On August 12, 2008, Dr. Hodge indicated that Plaintiff had a cervical injection but did not receive any clear benefit from it, and he referred her to pain management. Despite Plaintiff's report that her pain was ten out of ten, Dr. Hodge noted Plaintiff was in no apparent distress. Examination revealed that Plaintiff had normal range of motion in her cervical spine, as well as normal muscle strength and reflexes. Tr. 673-675l. Nerve conduction studies performed in November 2008, showed a suggestion of right plantar nerve compromise, but EMG studies of Plaintiff's right arm were normal. Tr. 634-635. On December 2, 2008, Plaintiff reported that her prescribed pain medications were "working well." Tr. 636-637.

On December 31, 2008, Plaintiff was informed by Dr. David S. Rogers that he would no longer treat Plaintiff. Tr. 640. On January 26, 2009, it was explained that Plaintiff was discharged from Dr. Rogers' office for inappropriate behavior, and his office was willing to see Plaintiff for injections (steroids), but not for narcotic management. Tr. 649.

On January 19, 2009, Plaintiff was transported by ambulance to the Mary Black Healthcare ("MBH") emergency room, with the chief complaint that she was out of medication. It was noted that she had "[m]ultiple previous visits for same or similar complaint." Examination revealed only "mild" neck spasm in her neck, with "minimal" tenderness to palpation. She was provided prescriptions for muscle relaxants and narcotic pain medication, and discharged. Tr. 653-654. On January 23, 2009 (four days after her visit to MBH), Plaintiff presented to SRHS complaining of back pain, stating that she was out of pain medication. She was provided a prescription for Lortab and released. Tr. 735-737. On February 2, 2009 (approximately one week after being seen at SRHS), Plaintiff presented to MBH complaining of neck pain that she rated as a ten out of ten, although she also reported her symptoms were of only "mild" severity. Examination revealed that Plaintiff was

9

in no acute distress, and had normal range of motion in her neck with only "mild" tenderness. She was provided a prescription for Ultram and discharged. Tr. 663.

## HEARING TESTIMONY

Plaintiff testified that she lived independently with her five-year-old daughter. Tr. 61. She acknowledged she worked after her alleged onset of disability date, and said she had workers' compensation claims that were still pending. Tr. 61-63, 67. Plaintiff stated her only source of income was child support payments. Tr. 63. She testified she drove a car, but only as little as possible. Tr. 67. She also stated she drove seven to eight times a week. Tr. 76. Plaintiff testified that she was on medication that made her sleepy. Tr. 68-69. She stated that she was in constant pain in her arms, legs, and neck, and she quit working because she was afraid of falling when her limbs became numb. Tr. 68, 71. Plaintiff stated she was unable to care for her daughter without assistance provided by her cousins, which included the cousins doing her daughter's hair and feeding her daughter meals. Tr. 69-70. She said that she had crying spells and had been treated for depression with Cymbalta. Tr. 71. She also stated she needed to use a motorized cart to shop. Tr. 73. Plaintiff stated that she was able to cook frozen dinners in the microwave, did small loads of laundry, tried to do dishes, tried to fold clothes, cleaned her living room, dusted, and wiped things down in the bathroom. Tr. 77-78. She said she did not mop, sweep, or take out the trash. Tr. 77. Plaintiff also stated that she went out to eat and had been to the movies. Tr. 78-79.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ failed to properly evaluate the demands of her past relevant work; (2) the ALJ failed to make a proper credibility determination; and (3) the Appeals Council erred in evaluating new evidence from her treating neurosurgeon. The Commissioner contends that

substantial evidence[1] supports the final decision that Plaintiff is not disabled within the meaning of the Social Security Act.

Plaintiff argues that the ALJ failed to adequately evaluate the demands of her past work or compare it to her RFC, and the ALJ made no inquiries about the mental or physical demands of her past work as a parts inspector before finding that she retained the ability to perform that work. The Commissioner contends that the ALJ reasonably considered the requirements of Plaintiff's past relevant work as a parts inspector and obtained VE testimony that supports the conclusion that Plaintiff could perform this work. Additionally, the ALJ argues that Plaintiff has not met her burden to prove she cannot perform her past work, and that Plaintiff's counsel had the opportunity to question the VE about the VE's testimony, but declined.

At the fourth step of the disability inquiry,[2] a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy. SSR 82-61. The claimant

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

[2]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

bears the burden of establishing that he or she is incapable of performing his or her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b).

Social Security Ruling 82-62 requires the ALJ to determine the following when evaluating whether a claimant can perform her past relevant work:

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the past job/occupation.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 86-62. The claimant is the primary source for information about his past work. Id.

It is unclear from the record whether the ALJ's decision is supported by substantial evidence and correct under controlling law. An undated and unsigned "Work History Report" (Tr. 178-191) contains a list of Plaintiff's past jobs which includes the job title "Parts Inspector" and the dates worked of "1997-1997." Above this job is the job title of "Machine Operator" which was listed as beginning in "1997," and below it is listed the job title of "Picker" with an end date of "03/16/2007." Tr. 178. Another unsigned and undated "Work History Report" is also included in the record. Tr. 212-219. In it, there is no mention of the job of parts inspector. Tr. 212. The job titles listed on this report include "Dolfer" from 1/96 to 8/96, and "Warper Oper[ator]" from 9/97 to 5/98. Id. During the hearing, the ALJ questioned Plaintiff about past jobs from 2006 to 2008, but did not question her about her job(s) in 1997. The ALJ did not question Plaintiff about her past job as a parts inspector and there is no testimony in the record concerning the requirements of this job. Although the ALJ

stated that he found no conflict between the Dictionary of Occupational Titles ("DOT") and the information from the VE,[3] the ALJ did not identify the DOT number of the job of parts inspector and this number was not identified by the VE.

It is unclear from the record whether the ALJ complied with the requirements of SSR 86-62. In particular, the ALJ does not appear to make adequate findings of fact as to the physical and mental demands of Plaintiff's past job as a parts inspector. The record does not provide the specific dates during which Plaintiff performed this job (or whether it was performed for sufficient time to find that it was past relevant work). Further, as there is no information provided concerning the demands of this work, it is unclear whether the DOT description used by the ALJ and VE (even if it can be identified) corresponds to the past relevant work performed by Plaintiff.

This action is remanded to the Commissioner to consider whether Plaintiff is able to perform her past relevant work as a parts inspector. Because it is recommended that this action be remanded on this basis, it is also recommended that the ALJ consider the new material presented to the Appeals Council as this evidence may affect the ALJ's residual functional capacity findings. Additionally, it is recommended that upon remand the Commissioner take into consideration Plaintiff's remaining allegations of error concerning the ALJ's credibility analysis.

---

[3]SSR 00-4p provides:
Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE and VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.
Id.

13

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to determine whether Plaintiff can perform her past relevant work as a parts inspector (and continue the sequential evaluation process if necessary) and to evaluate Plaintiff's credibility in light of all of the evidence (including the new evidence submitted to the Appeals Council).

It is, therefore, **RECOMMENDED** that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

December 12, 2012
Columbia, South Carolina